CHARLES M. HENDERSON, III
HILL RIVKINS LLP
45 Broadway, Suite 2110
New York, NY 10006
(212) 669-0600
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NO. MAFLSTP250315,

Plaintiff,

- against -

JIMMA TRUCKING LLC, AM TRANS EXPEDITE d/b/a FUSION TRANSPORT LLC, LINEAGE LOGISTICS PFS, LLC, and TURKISTAN, INC,

Defendants.

Case No. 26-cv-

**Plaintiff Demands Trial by Jury**

**COMPLAINT**

Plaintiff Certain Underwriters at Lloyd's Subscribing to Policy No. MAFLSTP250315, Inc. ("Plaintiff" or "Underwriters"), by and through its attorneys Hill Rivkins LLP, as and for its Complaint against the above-named Defendants, states as follows:

**INTRODUCTION**

1. This action arises from the loss, non-delivery, and/or theft of a cargo of frozen snow crab clusters (the "Cargo") that were to be transported by interstate motor

carriage from Raynham, Massachusetts to Florence, South Carolina, in or about September 2025.

**JURISDICTION & VENUE**

2. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 as this action arises from the transportation of goods by motor carriage in interstate commerce and is governed by the Carmack Amendment to the Interstate Commerce Act, as amended and re-codified, 49 U.S.C. § 14706, and the amount in controversy exceeds $10,000 per bill of lading. Supplemental jurisdiction also exists over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 49 U.S.C. § 14706(d)(1) and/or (2) insofar as one or more Defendants operate through this District and/or the loss at issue occurred in this District. Alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and/or (2) insofar as one or more Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

**THE PARTIES**

4. At all times relevant hereto, Plaintiff Underwriters were and now are foreign insurance companies and/or Lloyd's syndicates in the London market subscribing to a stock throughput policy of insurance, unique market reference no. MAFLSTP250315 (the "Policy"), effective for the period of March 2025 – March 2026.

5. At all times relevant hereto, Plaintiff's assured, Arctic Fisheries Ltd. ("Arctic"), was and now a business entity organized and existing under New York law, with an

office and principal place of business at 965 Maryvale Drive, Buffalo, New York 14225.

6. At all times relevant hereto, Arctic was the owner of the Cargo.

7. Plaintiff issued a policy of insurance prior to the shipment of the Cargo, and prior to any loss thereto, whereby Plaintiff agreed to indemnify Arctic against any loss of and/or damage to the Cargo, including mitigation expenses, and Plaintiff therefore became obligated to pay (and has paid) no less than $369,719.50 to Arctic on account of the described loss of the Cargo herein. Plaintiff is, therefore, is subrogated to the rights of Arctic, whatever those rights may be.

8. Plaintiff has, therefore, sustained damages in an amount no less than $369,719.50 on account of the loss of the Cargo, no part of which has been paid, although duly demanded.

9. At all times relevant hereto, Defendant Jimma Trucking LLC ("Jimma") was and now is a business entity organized and existing under Georgia Law, with an office and principal place of business at 2865 Ivy Brook Lane, Buford, Georgia 30519.

10. At all times relevant hereto, Defendant Jimma was engaged in the business of, and held itself out to the general public, as a motor carrier of goods for hire and is registered as an active carrier for interstate carrier operation under DOT No. 2568802 on the FMCSA Safer registry.

11. At all times relevant hereto, Defendant AM Trans Expedite LLC d/b/a Fusion Transport LLC ("AM Trans") was and now is a business entity with an office at 4 Westbrook Corporate Center, Suite 1020, Westchester, Illinois 60154.

12. At all relevant times hereto, AM Trans Expedite LLC, d/b/a Fusion Transport LLC and AM Trans Express Inc were and now are part of the same group of logistical companies, doing business, individually and collectively under the brand and shared trade name, offering freight transportation and related logistics and supply chain services, including motor carriage of goods for hire, from the same address at 4 Westbrook Corporate Center, Suite 1020, Westchester, Illinois 60154.

13. At all times relevant hereto, AM Trans was engaged in business and held itself out to the general public as a motor carrier of goods for hire, a freight forwarder, and/or full-service logistics company that provides transportation of property for compensation in the ordinary course of its business; assembles and consolidates (or provides for assembling and consolidating) shipments; assumes responsibility for the transportation of property from place of receipt to destination; and uses both its own assets, drivers, power units, and subcontracted interstate motor carriers to perform such transportation in interstate commerce.

14. In holding itself out to the public as a motor carrier of goods for hire, freight forwarder, and/or full-service logistics company, AM Trans advertises the following services and capabilities on its website, available at https://amtransinc.com/ (last accessed on March 27, 2026):

a. "AM Trans Inc. Truck Transportation. AM Trans is small enough to care and big enough to handle all of your transportation needs. By saying that we are promising safe, on time and promptly services to our customers. Our

highly trained staff of drivers, office and maintenance personnel is dedicated to their role in the industry."

b. "Our local, regional, and OTR trucks are managed to help smooth operations. Those three divisions are working together to match your transportation needs, regardless if it's a one mile run or hundreds of miles run."

c. "With many years of experience, the best drivers and a large modern fleet, you can be sure that by cooperating with us you will save time and money."

d. "Our fleet of experienced drivers is dedicated to their assignments, while safely operating their equipment. For our customers convenience and preferences we are using 53' long plated wall trailers only!"

e. "You can count on our fleet of experienced and dependable drivers and our modern equipment of 53'-long-plated-wall trailers to move your freight on time and at affordable prices."

f. "We take your freight at your desired directions, safe and on time!"

g. "Using the latest technology and training, we constantly evaluate drivers and equipment for operational safety. We also equip our vehicles with on-board cameras and GPS systems to protect our drivers, cargo and others."

h. "Our fleet is constantly expanding to meet the needs of our customers. Newest 53' Dry Van trailers is ready for freight of all kinds."

15. At all times relevant hereto, Defendant Lineage Logistics PFS, LLC ("Lineage") was and now is a business incorporated in Delaware and registered to do

business within the Commonwealth of Massachusetts as a foreign limited liability company with a facility and place of business at 571 Paramount Drive, Raynham, Massachusetts 02767 (the "Facility").

16. At all times relevant hereto, Defendant Lineage was engaged in the business of offering freight transportation, related logistics, and cold supply chain services as a third-party logistics ("3PL") provider, including cold chain facility logistical services.

17. At all times relevant hereto, Defendant Turkistan Inc. ("Turkistan") was and a business entity organized and existing under Ohio law, with an office and principal place of business at 11427 Reed Hartman Hwy, Suite 214, Cincinnati, Ohio 45241.

18. At all times relevant hereto, Defendant Turkistan was and now is engaged in the business of, and held itself out to the general public as, a motor carrier of goods for hire and is registered as an active carrier for interstate carrier operation under DOT No. 3567995 on the FMCSA Safer website.

**GENERAL ALLEGATIONS**

19. On or about September 3, 2025, Arctic hired AM Trans to transport the Cargo via interstate motor carriage from Lineage's Facility in Raynham, Massachusetts to Performance Food Group in Florence, South Carolina (the "Shipment").

20. Unbeknownst to Plaintiff or Arctic, AM Trans attempted to subcontract the Shipment to Turkistan via email.

21. Unbeknownst to Plaintiff and Arctic, Turkistan's email system had been compromised by fraudulent parties who impersonated Turkistan to, without authorization, to further subcontract the shipment to Jimma.

22. On September 3, 2025, Jimma's driver arrived at the Lineage Facility to collect the Cargo.

23. At the time of its release to Jimma, the Cargo was in good order and condition, and suitable in every respect for its intended transportation to Florence, South Carolina.

24. At the time of the Cargo's pick-up at Lineage's Facility, Lineage released the Cargo to Jimma's driver, who provided a DOT number (3567995) that matched Turkistan's DOT number, despite driving for Jimma – neither of which matched the carrier name on the bill of lading.

25. Lineage issued bill of lading no. A3-734043 for the transport of the Cargo which provided the final destination or "Deliver to" address as 2801 Alex Lee Blvd, Florence, South Carolina 29506, and provided, "Carrier: AM TRANS EXPEDITE LLC" as referenced in part below:

Lineage

**STRAIGHT BILL OF LADING/SHORT FORM-NOT NEGOTIABLE**

**Carrier** : AM TRANS EXPEDITE LLC [AMXK] BOL:A3-734043

AS TO ALL PARTIES HEREIN THIS CONTRACT IS SUBJECT TO THE TERMS AND CONDITIONS OF THE UNIFORM DOMESTIC STRAIGHT BILL OF LADING SET FORTH IN THE UNIFORM FREIGHT CLASSIFICATION TARIFF IN EFFECT ON THE DATE HEREOF CARRIER ACKNOWLEDGES RECEIPT OF THE DESCRIBED ARTICLES (EXCEPT AS NOTED AND AS TO CONTENTS OF PACKAGES), AND SHALL DELIVER SAME TO THE DESCRIBED DESTINATION OR A CARRIER THAT WILL DELIVER TO THIS DESTINATION.

| SHIPPER : | DELIVER TO (CONSIGNEE) : |
| --- | --- |
| (ARCFIS) ARCTIC FISHERIES LTD<br>965 MARYVALE DRIVE<br><br>Buffalo, NY, 14225, US | (/) PERFORMANCE FOOD GROUP FLORENC<br>IFH FLORENCE<br>2801 ALEX LEE BLVD<br>FLORENCE, SC, 29506, US<br>**Freight Terms** : **Collect** |

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Appointment # | : 0339134681 | Date:2025-09-03 15:00 | **Load #** | : | **30976** |
| Reference #1 | : | | DOT # | : | 3567995 |
| PO # | : 912693 | | Trailer # | : | 29836 |
| **Customer Ref#** | : **34684** | | Seal 1 | : | 3753476 |
| Order Date | : 08.29.25 | | Seal 2 | : | |
| Ship Date | : 09.03.25 | | Temp F/M/B | : | -10/-10/-10 |
| Arrival Date | : 09.01.25 | | | | |

26. Despite the inconsistencies of fact, Lineage released the Cargo from its Facility.

27. Instead of proceeding to Florence, South Carolina, the driver was instructed by fraudulent parties to divert the Cargo to a street location at 208 Whittier Street, in Bronx, New York.

28. Upon arrival in the Bronx, the Cargo was transloaded into another trailer by unknown individuals and presumably stolen.

29. The Cargo was never delivered to its intended destination of Florence, South Carolina, and was presumably stolen by the unknown individuals.

30. Pursuant to the policy of insurance, Plaintiff compensated Arctic for the loss of the Cargo and became subrogated to all rights and remedies of Arctic against the Defendants for the loss, whatever those rights may be.

31. All obligations and conditions precedent to suit have been performed by Plaintiff and/or Arctic or otherwise have been waived and/or excused by Defendants.

**FIRST CLAIM FOR RELIEF**
**(against AM Trans, Turkistan, and Jimma)**

32. Plaintiff repeats and re-alleges paragraphs 1 through 31, as if set forth at length herein.

33. Defendants AM Trans, Turkistan, and Jimma (and/or their employees, agents, servants, and/or subcontractors for whom they are responsible) agreed to transport and/or arrange the transportation of the Cargo by interstate motor carriage from Raynham, Massachusetts to Florence, South Carolina, as specified in the Bill of Lading referenced in Paragraph 27, in exchange for certain consideration.

34. Defendants AM Trans, Turkistan, and Jimma failed to deliver the Cargo to destination in Florence, South Carolina in the same good order and condition as it was received upon pick-up in Raynham, Massachusetts.

35. Defendants AM Trans, Turkistan, and Jimma breached their statutory, common law, and/or contractual duties and obligations as interstate motor carriers, freight forwarders, third-party logistics providers, and/or bailees of the Cargo; and were otherwise at fault for the damages alleged herein.

36. The non-delivery and loss of the Cargo was not caused by any circumstance that would give rise to a defense or exception to carrier liability, such as inherent vice of the goods or acts of God, the public authority, the public enemy, or the shipper.

37. By reason of the premises, Plaintiff has sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in the amount of $369,719.50.

**SECOND CLAIM FOR RELIEF**
**(against Lineage)**

38. Plaintiff repeats and re-alleges paragraphs 1 through 37, as if set forth at length herein.

39. Upon information and belief, Lineage agreed to provide cold supply chain logistical services to Arctic and Lineage owns, leases, and/or operates the Facility at 571 Paramount Drive, Raynham, Massachusetts 02767.

40. In or prior to September 2025, the Cargo was stored at Defendant Lineage for cold chain logistical services at the Raynham Facility pending pick-up by carrier(s).

41. As cold supply chain logistical specialists, Defendant Lineage owed duties to exercise reasonable care in the safe and secure release of the Cargo.

42. Yet, Lineage released the Cargo from its Facility to a driver, which (a) was not identified as the intended carrier on the Bill of Lading and/or (b) presented an improper DOT number that did not match with the actual carrier's company's DOT number.

43. Prior to releasing the Cargo from the Facility, Defendant Lineage neither alerted Arctic to the foregoing discrepancies nor sought confirmation from Arctic or AM Trans that the Cargoes could be released to Jimma.

44. Defendant Lineage thus failed to exercise reasonable care, and was negligent, in relation to the logistical services and release of the Cargo and failed to abide by industry standards during such transaction.

45. By reason of the premises, Defendant Lineage was negligent in performing their duties as cold supply chain logistical providers in Lineage's release of the Cargo. Further, their negligent and unauthorized delivery of the Cargo to the driver constitutes conversion as a matter of law.

46. As a direct and proximate result of said negligence and conversion, Plaintiff has sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in the amount of $369,719.50.

**WHEREFORE**, Plaintiff prays:

(i) that process may issue against Defendants in due form of law according to the practice of this Honorable Court, citing them to appear and answer the foregoing;

(ii) that judgment be entered against Defendants AM Trans, Turkistan, and Jimma, jointly and severally, on Plaintiff's First Claim for Relief in the amount of $369,719.50, together with costs, interest, and reasonable attorney's fees;

(iii) that judgment be entered against Defendant Lineage, jointly and severally, on Plaintiff's Second Claim for Relief in the amount of $369,719.50, together with costs, interest, and reasonable attorney's fees; and

(iv) for such other and further relief as this Court may deem just and proper under the circumstances.

Dated: April 13, 2026

HILL RIVKINS
*Attorneys for Plaintiff*

By: /s/Charles M. Henderson

Charles M. Henderson, III
D. Mass. #651129
45 Broadway, Suite 2110
New York, NY 10006
(212) 669-0600
Chenderson@hillrivkins.com